B. John Casey, OSB No. 120025
Email:  john.casey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone: (503) 294-9170
Facsimile:  (503) 220-2480

John M. Skeriotis, Ohio Bar No. 0069263
Email:  jms@etblaw.com
*Pro Hac Vice Application Forthcoming*
Sergey Vernyuk, Ohio Bar No. 0089101
Email:  sv@etblaw.com
*Pro Hac Vice Application Forthcoming*
EMERSON THOMSON BENNETT, LLC
1914 Akron Peninsula Road
Akron, OH  44313
Telephone:  (330) 434-9999
Facsimile:   (330) 434-8888

        Attorneys for Plaintiff
        Nuance Systems Corporation, d/b/a NSI

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| NUANCE SYSTEMS CORPORATION d/b/a NSI, | Case No.: _____ |
| Plaintiff, | COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| QORTEK, INC., | |
| Defendant. | |

Plaintiff Nuance Systems Corporation d/b/a NSI ("Nuance") retained Defendant QorTek,

Inc. ("QorTek") to design and manufacture hardware and software for Nuance, and the parties

agreed that Nuance would own the resulting software and hardware design files.  QorTek has

COMPLAINT – 1

reneged on the parties' agreement, now claiming without basis that: (a) QorTek owns unspecified intellectual property rights in the software and hardware, and (b) Nuance is prohibited from using anyone other than QorTek to create or revise the relevant software and hardware.  QorTek further refuses to ship any products to Nuance unless and until Nuance agrees to these newly asserted positions of QorTek.  By this Complaint, Nuance seeks (i) a declaration that it rightfully owns the relevant software and hardware and that QorTek owns no intellectual property in same, and (ii) damages for QorTek's breaches of the parties' contract and the implied covenant of good faith and fair dealing.

## PARTIES

1.       Nuance is an Oregon corporation having a principal place of business at 7233 SW Kable Ln., Ste. 500, Portland, Oregon, 97224.

2.       QorTek is a Pennsylvania corporation having a principal place of business at 1965 Lycoming Creek Rd., Ste. 205, Williamsport, Pennsylvania, 17701.

## JURISDICTION AND VENUE

3.       Nuance is deemed to be a citizen of Oregon per 28 U.S.C. § 1332(c).

4.       QorTek is deemed to be a citizen of Pennsylvania per 28 U.S.C. § 1332(c).

5.       The amount in controversy, without interest and costs, exceeds $75,000.

6.       This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332.

7.       This Court has personal jurisdiction over QorTek by virtue of, among other things, QorTek's active and continuous solicitation of Nuance's business and shipping products to Nuance in Oregon in the course of that business.  This suit arises out of that business relationship, and asserting personal jurisdiction over QorTek is reasonable and fair.

8.      Venue is proper in the District of Oregon per 28 U.S.C. § 1391 and in the Portland Division per LR 3-2(b) because QorTek sent business solicitations and communications to Nuance in Portland and shipped products to Nuance in Portland.  Thus, a substantial part of the events giving rise to the claims occurred in Portland.

9.      Furthermore, venue and personal jurisdiction are proper in the Portland Division pursuant to the parties' Mutual Confidentiality and Non-Disclosure Agreement effective January 17, 2018 (further explained below), because this suit arises out of the business relationship that was conducted under this Agreement.

## BACKGROUND FACTS

10.     Nuance manufactures ultra-high-purity gas and chemical delivery systems.  Some of these delivery systems utilize ultrasonic sensors for liquid-level detection.

11.     Dr. Bill Kimmerle is the CEO of Nuance.

12.     QorTek is an engineering company that designs and manufactures control and detection equipment for piezoceramic devices.

13.     Mr. Ross Bird is the President of QorTek.

14.     Mr. Jon Zook was the Engineering Manager and is now the Chief Operating Officer of QorTek.

### First Version of the Hardware: LS.400

15.     In or about March 2013, Nuance and QorTek entered into discussions for QorTek to design and manufacture driver control boxes for Nuance's liquid level sensors having probes with four piezoelectric sensing elements.

16.     The parties entered a Mutual Non-Disclosure Agreement effective March 18, 2013 ("First NDA," attached herein as Exhibit A).

COMPLAINT – 3
96138797.3 0099865-10005.050

17.     The First NDA: (a) required a party receiving confidential information to (i) hold such information in strict confidence, and (ii) use such information only for the purpose of the parties' business relationship pertaining to chemical and gas systems, and (b) prohibited the receiving party from disclosing such information except as provided in the First NDA or approved by the disclosing party.

18.     QorTek agreed to design the control box hardware ("Hardware") and to write the software that was to run on the control boxes ("Software") for Nuance.

19.     Nuance, in turn, planned to sell finished Hardware (running the Software) to its own customers.

20.     It took some time to design both the Hardware and Software.  The Hardware and Software went through several iterations before arriving at the current version of each.  Some of this history is set forth below.

21.     On April 16, 2013, Mr. Zook of QorTek emailed "Quote No. 20130416" to Dr. Kimmerle of Nuance, for the scope of work the parties had discussed.  Quote 20130416 listed a $5,000 charge labeled "NRE."  The control box to be designed by QorTek was referred to as the "Electronic Level Sensing Module."

**22.**     Dr. Kimmerle replied the same day, asking Mr. Zook to "please note that the **deliverables for the $5k deposit are; [*sic*] 1) Gerber files, 2) software and that NSI will own the software (well documented)"** (emphasis added).  *See* Exhibit B (redacted).

23.     A Gerber-format file is used by printed-circuit-board-industry software to describe a printed circuit board, including its copper layers, solder mask, and legend.  A Gerber file may be used to fabricate the printed circuit board described by the file.

---

24.     Mr. Zook replied the same day (April 17, 2013) with an "updated quote" that listed a $5,000 charge labeled "NRE" and added a "Note: **Gerbers and Software created for this project included as deliverables in NRE**" (emphasis added).  *See* Exhibits B and C (redacted).

25.     On April 19, 2013, Nuance emailed Purchase Order No. 1459 to QorTek which listed $5,000 for "NRE" "Engineering Charge."  Nuance paid QorTek the $5,000 charge.

26.     The first version of the control box designed by QorTek for Nuance was called the LS.400.

27.     In or about May 2013, the parties held a telephone conference where Nuance expressed interest in entering an agreement whereby QorTek would not sell the LS.400 directly to Nuance's customers if approached, but would direct such inquiries to Nuance.

28.     On June 19, 2013, Mr. Zook emailed Dr. Kimmerle that QorTek would agree to such terms if Nuance would agree to "have all of [Nuance's] electronics designed and built by QorTek."  QorTek did not want Nuance to use anyone other than QorTek to design and build all electronics for Nuance.  *See* Exhibit D.

29.     Dr. Kimmerle replied to QorTek on June 20, 2013, and indicated that Nuance would not do business with QorTek if QorTek intended to hold Nuance hostage in this manner. Dr. Kimmerle stated that if QorTek intended to sell Nuance's product (or similar products) to others, then Nuance would request "all files and programming" and that Nuance would move its business elsewhere.  *See* Exhibit D.

30.     Mr. Bird of QorTek replied on June 24, 2013, stating that QorTek is "not looking to hold [Nuance] hostage or discuss new terms," and that the concern apparently resulted from QorTek's misunderstanding.  *See* Exhibit D.

COMPLAINT – 5

31.     In or about September 2013, Nuance asked QorTek to remove QorTek's logo from the circuit boards inside the Hardware and to replace it with Nuance's logo.

32.     In response, QorTek removed its logo label from the circuit boards and agreed to add Nuance logo labels to the circuit boards.

33.     The initial versions of the Software produced by QorTek had errors and bugs, and the parties worked together to troubleshoot and debug the Software.

34.     The Software developed from the start of this project until early 2014 went through versions 1 through 6.

35.     In or about February 2014, Nuance asked QorTek if the Software could be reprogrammed to include certain error detection logic and different truth-table logic.  Nuance requested a different truth-table logic because of a request from one of its customers.

36.     On February 19, 2014, Mr. Zook emailed Dr. Kimmerle Quote No. 20140222, which listed a $600 charge for "Software Detection Update."

37.     Nuance emailed an updated Purchase Order No. 1459 (that included the $600 charge) to QorTek in response to Quote 20140222.  Nuance paid the $600 charge.

38.     QorTek revised the Software to incorporate the error detection logic and different truth-table logic.  The Software incorporating this error detection logic and different truth-table logic is version 7.

39.     In or about April 2014, per Nuance's request, QorTek revised the Software to have the original truth-table logic (like in version 6) but also incorporate the error detection logic (from version 7).  This version is version 8.

40.     In or about April 2014, QorTek emailed Nuance the compiled Software so that Nuance could update the Software on the Hardware in its possession.

41.     In or about May 2014, per Nuance's request, QorTek revised the Software to fix a sensitivity issue due to high temperature exposure of the probes.  This version is version 9.

42.     QorTek emailed the compiled version 9 Software to Nuance on May 13, 2014.

43.     In or about June 2014, Nuance retained Dr. Nicholas Kuzma as an independent contractor to work on the liquid level sensor and improve its design and operation.  Dr. Kuzma is an Adjunct Professor of Physics at Portland State University.

44.     After being retained, Dr. Kuzma began investigating the Hardware and Software, began trying modifications of the Hardware, suggested modifications to the Software, and asked QorTek to implement them.

45.     For example, Dr. Kuzma emailed Mr. Zook a "List of Suggested Modifications" on July 31, 2014.

46.     As another example, Dr. Kuzma emailed Mr. Zook a request to modify the Software on August 4, 2014.  The requested modification was to implement Dr. Kuzma's "time-dependent two-parameter threshold curve" concept (instead of the single-parameter threshold as existed in versions 1 through 9).

47.     On August 18, 2014, Dr. Kuzma emailed Mr. Zook the first iteration of the "time-dependent two-parameter threshold curve."

48.     On August 22, 2014, Mr. Zook emailed Dr. Kimmerle Quote No. 20140822, which listed a charge for $1,200.88 labeled "L.S.400 V10 Upgrade to threshold curve NRE."

49.     Nuance emailed Purchase Order No. 4273 to QorTek on August 22, 2014, in response to Quote 20140822.  Nuance paid the $1,200.88 charge.

50.     QorTek revised the Software to incorporate Dr. Kuzma's "time-dependent two-parameter threshold curve."  This is version 10.

51.     Because the first version 10 of the Software had some problems identified by Dr. Kuzma, QorTek revised the Software several times during September and October 2014 to address the issues.  All of these revisions were done under the same version number – version 10.

52.     In or about March 2015, per Dr. Kuzma's request, QorTek made a minor revision to the Software to provide a "sensor detected" signal that could be measured.  This is version 11.

53.     In or about April 2017, per Dr. Kuzma's request, QorTek revised the Software to implement a new signaling scheme.  This is version 12.

54.     In or about December 2017, per Nuance's request, QorTek revised the Software to implement a small revision to the truth-table logic (of version 12) per request of Nuance's customer.  QorTek revised the Software to address some problems.  All of these revisions were implemented under the same version number – version 13.

55.     The parties entered a second Mutual Confidentiality and Non-Disclosure Agreement effective January 17, 2018 ("Second NDA," attached herein as Exhibit E).

56.     The Second NDA: (a) required a party receiving confidential information to (i) hold such information in confidence, and (ii) use such information only for the purpose of the parties' business relationship pertaining to liquid level sensor control boxes; (b) prohibited the receiving party from disclosing such information except as provided in the First NDA or approved by the disclosing party; (c) stated that the Second NDA is governed by Oregon law; and (d) stated that any dispute between the parties under or with respect to the Second NDA must be brought only in a federal or state court located in Oregon.

57.     Nuance regularly paid QorTek for units of Hardware and Software, and QorTek shipped them to Nuance.

58.     Nuance sells the Hardware to its customers without any confidentiality restrictions.

59.     The Hardware is capable of being reverse engineered, which will disclose the components used in the Hardware and the design of the printed circuit boards used in the Hardware.

60.     For these and other reasons, the Hardware does not qualify as a trade secret.

61.     Upon information and belief, QorTek does not own a patent or pending patent application that reads on the Hardware or Software.

**Second Model of the Hardware: LS.800**

62.     In or about November 2013, the parties discussed QorTek designing and manufacturing a second version of the control box, which version would work with a probe having eight piezoelectric sensing elements.

63.     This second version of the control box was called the LS.800.

64.     The LS.800 hardware and software was very similar to the Hardware and Software of the LS.400, except modified for eight (instead of four) piezoelectric sensing elements.

65.     By approximately October 2014, QorTek designed a prototype of the LS.800 hardware and software.

66.     Nuance regularly paid QorTek for units of the LS.800 hardware and software, and QorTek shipped them to Nuance.

67.     Nuance sells the LS.800 hardware to its customers without any confidentiality restrictions.

68.    The LS.800 hardware is capable of being reverse engineered, which will disclose the components used in the LS.800 hardware and the design of the printed circuit boards used in the LS.800 hardware.

69.    For these and other reasons, the LS.800 hardware does not qualify as a trade secret.

70.    Upon information and belief, QorTek does not own a patent or pending patent application that reads on the LS.800 hardware or software.

**DB9 Board**

71.    Each probe of Nuance's liquid level sensors has a DB9 connector that includes a small and simple printed circuit board ("Probe PCB").

72.    Nuance originally used a third-party, APC International, Ltd., ("APC"), to help manufacture the probes.  This required Nuance and APC to send probes back and forth between them during the manufacturing process.

73.    On information and belief, APC contracted QorTek to manufacture the Probe PCBs for APC.

74.    Nuance wanted to simplify the probe manufacturing process by manufacturing the probes itself and to also improve their design.

75.    In or about May 2014, Nuance retained QorTek to perform a finite element analysis on Nuance's liquid level sensors, which QorTek did in or about September 2014.

76.    As a result of the finite element analysis, Nuance modified the design of the probes.

77.    In or about February 2015, Nuance asked QorTek if QorTek could provide the Probe PCBs directly to Nuance.

COMPLAINT – 10

78.     QorTek declined, believing such direct provision to be prohibited by a nondisclosure agreement between QorTek and APC.

79.     Therefore, with Dr. Kuzma's assistance, Nuance developed its own version of the Probe PCB ("Nuance Probe PCB").

80.     After developing the Nuance Probe PCB, Nuance gave the Gerber files from the Nuance Probe PCB (which were created during its development) to QorTek and asked QorTek to manufacture the Nuance Probe PCB.

81.     Mr. Zook emailed Quote No. 20150401.1 to Dr. Kimmerle on April 1, 2015, covering the manufacturing of the Nuance Probe PCB (called "L.S.DB9.4 – 4 Point Unshrouded DB9 to Coax Adapter Board" on the Quote).

82.     Nuance regularly paid QorTek for units of the Nuance Probe PCB, and QorTek shipped them to Nuance.

83.     Nuance sold and sells the Probe PCB and the Nuance Probe PCB to its customers without any confidentiality restrictions.

84.     The Probe PCB and the Nuance Probe PCB are capable of being reverse engineered, which will disclose the components used in them and the design of the printed circuit boards.

85.     For these and other reasons, the Probe PCB and the Nuance Probe PCB do not qualify as a trade secret.

86.     Upon information and belief, QorTek does not own a patent or pending patent application that reads on the Probe PCB or the Nuance Probe PCB.

87.     The Probe PCB and Nuance Probe PCB have no electronics to run any software.

**4-20mA Adapter Board**

88.    In or about July 2015, Dr. Kuzma developed a 4-20 milliamp (mA) adapter board ("4-20mA Board") for Nuance.

89.    On July 27, 2015, Dr. Kuzma sent Mr. Zook detailed specifications, schematics, and figures of the 4-20mA Board and asked for a quote to manufacture it.

90.    In response, Mr. Zook emailed Quote No. 20150805 to Dr. Kuzma and Dr. Kimmerle on August 5, 2015.  Quote 20150805 listed a charge for $3,000 labeled "NRE – update circuit and design PCB for manufacture Quad Relay to 4-20mA adapter box."

91.    In response, Nuance issued Purchase Order No. 5815 to QorTek, which listed a $3,000 charge for "NRE."  Nuance paid the $3,000 charge.

92.    Over the following few weeks, Dr. Kuzma improved the design of the 4-20mA Board and asked QorTek to implement his changes, which QorTek did.

93.    Nuance regularly paid QorTek for units of the 4-20mA Board, and QorTek shipped them to Nuance.

94.    Nuance sells the 4-20mA Board to its customers without any confidentiality restrictions.

95.    The 4-20mA Board is capable of being reverse engineered, which will disclose the components used in them and the design of the printed circuit boards.

96.    For these and other reasons, the 4-20mA Board does not qualify as a trade secret.

97.    Upon information and belief, QorTek does not own a patent or pending patent application that reads on the 4-20mA Board.

98.    The 4-20mA Board has no electronics to run any software.

**The Dispute**

99.    Mr. Stephen Dynan is QorTek's Vice President of Business Development.

100.    On December 5, 2017, Dr. Kimmerle emailed Mr. Dynan and requested the Gerber files for the Hardware, noting that the parties had agreed from the onset that Nuance would have access to those files.

101.    On January 3, 2018, Dr. Kimmerle emailed Mr. Dynan to follow up on the request for the Gerber files and also asked for the Software program files.

102.    Mr. Dynan replied on January 8, 2018, indicating that the "Gerber files were sent last week."

103.    After Dr. Kimmerle followed up with Mr. Dynan on January 22, 2018, regarding items missing from the Gerber file package, Mr. Dynan emailed the Gerber files and compiled Software on January 30, 2018.

104.    In his January 30, 2018 email, Mr. Dynan stated that the provided information was not intended to be used for any reason other than to satisfy Nuance's requirement to demonstrate that the intellectual property is available for Nuance's customers in case QorTek is unable to supply components to Nuance.  Notably, Mr. Dynan did not provide the Software source code.

105.    On February 14, 2018, Mr. Bird sent an email to Dr. Kimmerle (attached herein as Exhibit F, pp. 4-6), stating that:

        a.    the Software and the Gerber files to the Hardware were QorTek's intellectual property and that QorTek did not transfer it to Nuance nor authorize Nuance to use it for any purpose other than quality-conformance inspections;

b.      QorTek believes that Nuance's use of the Gerber files and Software to develop revised versions of the Hardware or Software would violate the nondisclosure agreements between the parties;

c.      QorTek would fulfill and deliver any open acknowledged orders from Nuance but would not accept any more purchase orders until the parties "can clarify the relationship moving forward."

106.    On February 15, 2018, Mr. Bird emailed a proposed Memorandum of Understanding ("Proposed MOU") to Dr. Kimmerle.  *See* Exhibit F, p. 3; Exhibit G.  The Proposed MOU proposed that the parties agree that, among other things:

a.      "QorTek is the exclusive owner of all the existing level sensor control electronics technology and IP . . . .  This will include the schematic, layout topology, PCB art, and firmware and code within the respective embedded systems, each of which is considered a trade secret of QorTek";

b.      Nuance "agrees to not utilize any of the QorTek proprietary information to source these control boards and/or technology from any other vendor";

c.      Nuance "agrees to not reverse engineer all or any portion of the QorTek Technology directly or indirectly through a third party";

d.      Nuance "agrees to not use the QorTek Technology to internally develop their own next generation products";

e.      Nuance "agrees to utilize QorTek as their exclusive developer of technology and manufacturer of products for all [Nuance] Level Sensor Control Boards and piezoelectric drive electronics, including all FPGA software programs and updates";

     f.      "QorTek will retain all ownership of the design and related intellectual property of the level sensor control electronics" listed in Attachment B to the Proposed MOU;

     g.      "QorTek will agree to sell all new control boards for a price no greater than 80% of the [Nuance] final sale price";

     h.      Nuance "will agree to place blanket orders for items in Attachment B in the amount of $150k per year."

107.     Appendix B of the Proposed MOU listed "LS.400 Technology and Products," "LS.800 Technology and Products," "DB9 Adapter Board Technology and Products," and "4-20mA Adapter Board and Products," with each of the above including a sublist of "Circuit Boards," "Gerber Files," "Software," "Source Code," "Drive Electronics," and "Receive Process and Computer Software." *See* Exhibit G, p. 3.

108.     Dr. Kimmerle replied to Mr. Bird on February 16, 2018, stating that Nuance owns the Gerber files and the Software, referring back to the parties' communications in April 2013. See Exhibit F, pp. 2-3.

109.     Dr. Kimmerle also stated that if QorTek does not supply control boxes to Nuance, "this will cause [Nuance] to potentially not be able to ship product to meet our customer's needs as Qortek is [Nuance's] sole source LS Control Box supplier and [it] will not provide [Nuance] with the necessary, critical information we need . . . .  If we cannot meet our customer's demands it will be solely because Qortek has decided to no longer supply NSI with product and provide us with what [Nuance] rightfully owns.  Any loss of sales and/or damages resulting from your actions will cause us to seek [Nuance's] lost sales and/or damages from Qortek." *See* Exhibit F, p. 3.

110.     Mr. Bird replied to Dr. Kimmerle on February 19, 2018, and confirmed that Nuance's purchase order 1459 "granted ownership of software (Version 8) to [Nuance] which has been delivered," but that this same purchase order "did not grant [Nuance] ownership of the IP." *See* Exhibit F, pp. 1-2.

111.     Mr. Bird's email also included a "QorTek IP Summary" which was substantially the same as Appendix B of the Proposed MOU, except that the LS.400 Technology and Products Software subitem now stated "Software – EXCEPT for the Version 8 Software which is owned by [Nuance]." *See* Exhibit F, p. 2.

112.     To date, QorTek has refused to deliver any additional hardware or software (for any product) to Nuance (other than for open purchase orders that were previously acknowledged) and has refused to provide any Software source code.

113.     When Nuance requested a change in the Software truth-table logic, per request from one of Nuance's customers, QorTek refused to make that change.

## CLAIM FOR RELIEF – COUNT 1: DECLARATORY JUDGMENT OF OWNERSHIP

114.     Nuance repeats and re-alleges paragraphs 1-113 as if fully set forth herein.

115.     QorTek has asserted that design of the Software, the Hardware, the LS.800 hardware and software, the Nuance Probe PCB, and the 4-20mA Board is QorTek's intellectual property and that Nuance is prohibited from using it, including on any new or revised Nuance products, without QorTek's authorization.

116.     Nuance disputes that QorTek owns any intellectual property in the hardware of the above items, and Nuance asserts that it owns any intellectual property in the Software. Consequently, Nuance believes that it may use, sell, and make any revisions to the hardware of the above-listed items and Software.

---

117.    Accordingly, there exists an immediate, substantial, and continuing controversy between Nuance and QorTek regarding the ownership of any intellectual property of the Software and hardware of the above-listed items.

118.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Nuance is entitled to a judgment declaring that it owns the copyrights to the Software and that QorTek does not own any intellectual property in the Software, Hardware, LS.800 hardware, Nuance Probe PCB, or the 4-20mA Board.

## CLAIM FOR RELIEF – COUNT 2: BREACH OF CONTRACT

119.    Nuance repeats and re-alleges paragraphs 1-113 and 115-118 as if fully set forth herein.

120.    Through the exchange of communications, quotes, and purchase orders, and through the parties' course of dealings, the parties entered into a contract where Nuance paid QorTek to design, manufacture, and deliver Software and Hardware for Nuance, where Nuance would own the Software and where QorTek would deliver the Gerber files and well-documented Software to Nuance.

121.    Nuance fully performed its part of the contract (without breach), paid QorTek as agreed, and cooperated with QorTek in the design, manufacturing, and testing of the Software and Hardware.

122.    QorTek breached the agreement by not delivering all Gerber files and source code for the Software to Nuance.

123.    Despite knowing that Nuance relies exclusively on QorTek to manufacture and deliver the Hardware and Software to Nuance so that Nuance can sell and deliver its products to its customers, QorTek has refused to make and deliver any additional Hardware and Software to

Nuance unless and until Nuance acknowledges that all intellectual property of the Hardware and Software is QorTek's and/or Nuance uses QorTek exclusively for the manufacture and design of current or revised versions of the Hardware and Software.

124.    Nuance is damaged by QorTek's breach because Nuance is not able to make further revisions to the Software it owns without the source code.  To change the functionality of the software running on the Hardware without the Software source code, Nuance will have to expend resources to design new software from start.

125.    Nuance is also damaged by QorTek's breach because Nuance will be unable to meet orders from its customers in a timely manner without the Hardware and Software supplied by QorTek, which will result in lost sales to Nuance and damage to its goodwill and reputation.

**CLAIM FOR RELIEF – COUNT 3:**
**<u>BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING</u>**

126.    Nuance repeats and re-alleges paragraphs 1-113, 115-118, and 120-125 as if fully set forth herein.

127.    The parties entered into a contract.

128.    This contract contains an implied covenant of good faith and fair dealing to protect the objectively reasonable contractual expectations of the parties.

129.    Nuance's reasonable contractual expectations included:

a.    that QorTek would deliver the Gerber files and well-documented Software when QorTek designed the Hardware and Software, for which Nuance paid;

b.    that QorTek would continue manufacturing and delivering the Hardware and Software to Nuance per the parties' contract and course of dealings;

    c.     that QorTek would not try to hold Nuance hostage by refusing to make and deliver any additional Hardware and Software to Nuance unless Nuance acknowledges that all intellectual property of the Hardware and Software is QorTek's and/or Nuance uses QorTek exclusively for the manufacture and design of current or revised versions of the Hardware and Software, despite knowing that Nuance relies on QorTek to manufacture and deliver the Hardware and Software to Nuance so that Nuance can meet orders from its customers, and that Nuance will not be able to meet orders from its customers (and thereby lose sales with resulting damage to Nuance's goodwill and reputation) without QorTek's performance.

130.    QorTek breached the covenant of good faith and fair dealing by:

    a.     refusing to make and deliver any additional Hardware or Software unless Nuance agrees that all intellectual property of the Hardware and Software is QorTek's and/or Nuance uses QorTek exclusively for the manufacture and design of current or revised versions of the Hardware and Software;

    b.     refusing to deliver all Gerber files and Software source code to Nuance;

    c.     refusing to acknowledge that the copyright to the Software belongs to Nuance.

131.    Nuance is damaged by QorTek's breach for the same reasons as in the preceding count.

## PRAYER FOR RELIEF

Therefore, Nuance prays for a judgment against QorTek as follows:

A.      a declaration that Nuance owns the copyrights to versions 1 through 13 of the Software;

B.      a declaration that QorTek does not own any intellectual property in the Software, Hardware, LS.800 hardware, Nuance Probe PCB, or the 4-20mA Board;

C.      in the alternative to requested relief A, a preliminary and permanent injunction requiring QorTek to assign any copyrights to the Software (versions 1 through 13) to Nuance;

D.      in the alternative to requested relief A, imposition of a constructive trust on QorTek to hold any copyrights to the Software (versions 1 through 13) for the benefit of Nuance;

E.      damages (with pre- and post-judgment interest) for sales lost by Nuance and for the resulting harm to Nuance's reputation and goodwill due to QorTek's refusal to provide Software, Hardware, LS.800 hardware, Nuance Probe PCB, or the 4-20mA Board to Nuance;

F.      damages (with pre- and post-judgment interest) incurred by Nuance in having to redesign the Software and Hardware due to QorTek's refusal to provide the Software source code and Gerber files;

G.      an award of Nuance's attorney's fees in bringing this action and any other relief that the Court deems appropriate.

DATED:  March 2, 2018.          STOEL RIVES LLP


                                s/ B. John Casey
                                _____
                                B. John Casey, OSB No. 120025
                                Email:  john.casey@stoel.com
                                STOEL RIVES LLP
                                760 SW Ninth Avenue, Suite 3000
                                Portland, OR  97205
                                Telephone:  (503) 294-9170
                                Facsimile:   (503) 220-2480


                                John M. Skeriotis, Ohio Bar No. 0069263
                                *Pro Hac Vice Application Forthcoming*
                                Sergey Vernyuk, Ohio Bar No.0089101
                                Email:  sv@etblaw.com
                                *Pro Hac Vice Application Forthcoming*
                                EMERSON THOMSON BENNETT, LLC
                                1914 Akron Peninsula Road
                                Akron, OH  44313
                                Telephone:  (330) 434-9999
                                Facsimile:   (330) 434-8888


                                Attorneys for Plaintiff
                                Nuance Systems Corporation, d/b/a NSI

---

COMPLAINT – 21